1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11   PHILLIP C. PAIK, M.D.,                          CASE NO. 05CV1913-H (NLS)

12                                    Plaintiff,   **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**
            vs.

13

14   MIKE LEAVITT, in his capacity as Secretary of the United States Department of Health and Human Services,

15

16

17                                    Defendant.

18

19       On October 6, 2005, Plaintiff Phillip C. Paik, M.D. ("Plaintiff") filed a complaint

20   for review of the final decision of the Secretary of the Department of Health and Human

21   Services, Mike Leavitt ("the Secretary"), which determined that Plaintiff was overpaid

22   Medicare Part B benefits.  (Doc. No. 1.)  Plaintiff filed a motion for summary judgment

23   on June 28, 2006.  (Doc. No. 12.)  The Secretary filed an opposition and cross-motion

24   for summary judgment on July 31, 2006.  (Doc. No. 18.)  Plaintiff filed an opposition

25   and reply on August 15, 2006.  (Doc. No. 23.)  On August 21, 2006, the Secretary filed

26   a reply.  (Doc. No. 24.)  The Court held a hearing on August 28, 2006.  Douglas Winter

27   appeared for Plaintiff and Assistant United States Attorney Robert Plaxico and

28   Assistant Regional Counsel for the Department of Health and Human Services

     Gioconda Molinari appeared for the Secretary.  For the following reasons, the Court

DENIES Plaintiff's motion for summary judgment and GRANTS the Secretary's cross-motion for summary judgment.

## Background

Plaintiff is a physician specializing in internal medicine, who was at all relevant times, a Medicare participating physician with offices in San Diego and Los Angeles. (Administrative Record ("A.R.") Vol. 1 at 9.) Plaintiff is not licensed in physical or orthopedic medicine, however, he and his four unlicensed employees administered physical therapy and osteopathic manipulation services to patients at both the San Diego and Los Angeles office locations from at least 2000 to 2002. (A.R. Vol. 1 at 135.) Plaintiff testified that he and his staff approached treatment holistically, treating the entire body both physically and psychologically. (A.R. Vol. 1 at 175; 17.) The physical therapy services provided consisted of massage, ultrasound, electrical stimulation and other therapeutic exercises. (A.R. Vol. 1 at 134-135.)

In March 2002, Plaintiff's Medicare carrier, National Heritage Insurance Company ("NHIC") initiated a study of special practice, family practice, and internal medicine. (A.R. Vol. 7 at 2143.) NHIC selected Plaintiff for an audit based on the large volume of physical therapy services his offices ordered. (A.R. Vol. 1 at 10.) NHIC reviewed the records from a sample of patients who received physical therapy services in Plaintiff's offices in 2001. (Id.) After determining that some of the physical therapy services administered were not medically necessary, NHIC initiated a new study for the period of January 1, 2002 to December 31, 2002. (Id.) In that study, NHIC randomly selected 25 patients whose claims Medicare paid, and who received physical therapy services in Plaintiff's office, and conducted an audit. (A.R. Vol. 7 at 2143, 2379-2404.)

During the sample period, NHIC identified 855 claims representing 58 beneficiaries and 6,518 services for which Medicare paid $128,054.13. (A.R. Vol. 7 at 2143.) NHIC randomly selected 40 claims from the sample, pertaining to 25

beneficiaries.  (Id.)  NHIC's medical advisor, Dr. Lawrence Miller, reviewed the selected records and concluded none of the extensive physical therapy services provided in Plaintiff's offices were medically necessary.  (A.R. Vol. 7 at 2144.)  Dr. Miller commented that the records did not sufficiently indicate the specified treatment plans or goals, and did not describe the results achieved.  (Id.)  Furthermore, the record did not document who performed the treatment.  (Id.)  Plaintiff billed for physical therapy services at both his Los Angeles and San Diego offices, on the same date and at the same time, indicating that Plaintiff's unlicensed staff were performing the services.  (A.R. Vol. 7 at 2151.)  Dr. Miller also found that a chiropractor affiliated with Plaintiff, Dr. Goon Sik Kang D.C., was billing for "manual manipulation" at the same time Plaintiff's office was billing for physical therapy services, which indicated patient sharing.  (A.R. Vol. 7 at 2148.)  Finally, Dr. Miller concluded that the physical therapy services provided by Plaintiff did not meet the requirements for reimbursable medical services under the relevant Medicare and Medical Services ("CMS") regulations, 42 C.F.R. §§ 410.60 and 410.61.  (A.R. Vol. 7 at 2153.)  Dr. Miller recommended that NHIC conduct a statistically valid random sample of Plaintiff's claims from the year 2002.  (Id.)

NHIC notified Plaintiff on January 29, 2003 that it would evaluate a new random sample of beneficiaries treated during the January to December 2002 time period.  (A.R. Vol 7 at 2108-2109.)  For that period, NHIC identified 3,108 claims representing 125 beneficiaries and 23,688 services.  (A.R. Vol. 6 at 2010.)  These services represented a total of $572,459.69 billed, of which Medicare paid $455,385.07.  (Id.)  From the sample, NHIC randomly selected 49 beneficiaries, 1,507 claims, and 11,517 services.  (Id.)  After analyzing the information provided by Plaintiff for the randomly selected services, NHIC concluded that the physical therapy services Plaintiff's office provided were not medically necessary and not covered by Medicare.  (A.R. Vol. 6 at 2056-57.)  As a result of the audit, NHIC found that an overpayment of $184,410.80 was made to Plaintiff for the services

identified.  (A.R. Vol. 6 at 2058.)  NHIC then extrapolated the sampled overpayment to the entire universe of 125 beneficiaries to yield a total overpayment of $370,662.00, with an 83.52% error rate.  (Id.)  NHIC concluded that Plaintiff knew of NHIC's medical policies (and thus the overpayment) because he received Medicare newsletters and policy issues sent to all providers in the Medicare program.  (A.R. Vol. 6 at 2057.)  NHIC notified Plaintiff of the overpayment on December 17, 2003 in the "Post Payment Medical Review Final Determination Letter."  (A.R. Vol. 6 at 1762.)  Based on additional information provided after the audit, the overpayment was reduced to $368,914.00.  (A.R. Vol. 6 at 1761.)

Upon receipt of the December 17, 2003 letter from NHIC, Plaintiff requested review by an NHIC hearing officer and contested the NHIC's findings.  (A.R. Vol. 1 at 221.)  On May 19, 2004, NHIC Medicare Hearing Officer Rose Brewer held an in-person hearing.  (A.R. Vol. 1 at 172-84.)  Plaintiff testified at the hearing and reviewed selected documents.  (Id.)  NHIC issued a written decision on July 22, 2004, upholding the overpayment because the physical therapy services provided by Plaintiff were not medically necessary and thus, not covered by Medicare.  (Id.)  NHIC determined that the documentation evidenced that the physical therapy services were performed by unlicensed aides.  (A.R. Vol. 1 at 180.)  NHIC also concluded that the physical therapy services Plaintiff or his staff provided were "palliative and not specific and effective treatment for the patients' reported conditions."  (A.R. Vol. 1 at 181.)  It further found that the treatment plans established by Plaintiff did not meet the requirements of 42 C.F.R. § 410.61 because they were not signed by Dr. Paik or a licensed physical therapist.  (Id.)

After NHIC's notification, Plaintiff requested an in-person hearing with an Administrative Law Judge ("ALJ").  (A.R. Vol. 8 at 2405-2466.)  The hearing was held on September 7, 2004.  (Id.)  Plaintiff, represented by counsel, testified at the hearing.  (A.R. Vol. 1 at 38-60.)  After the hearing and a review of the record and law, the ALJ upheld NHIC's overpayment decision.  (A.R. Vol. 1 at 60.)  The ALJ

agreed with NHIC's reasoning and stated that "[Plaintiff] acknowledged . . . that the physical therapy that was provided to the sample beneficiaries in this case was performed by his office employees, none of whom is a licensed physical therapist." (A.R. Vol. 1 at 26-27.)   Plaintiff appealed the ALJ's decision to the Medicare Appeals Council.  (A.R. Vol. 1 at 1.)  The Medicare Appeals Council denied his request for review on August 3, 2005.  (A.R. Vol. 1 at 1-2.)  Thus, the ALJ's decision became the final decision of the Secretary.  (Id.)  Plaintiff then filed a complaint in this Court for review of the Secretary's final decision.  (Doc. No. 1.)

**Discussion**

**A.     Legal Standard**

This Court has jurisdiction to review the final decision of the Secretary of Health and Human Services pursuant to 42 U.S.C. § 405(g) (made applicable by 42 U.S.C. § 1395ff(b)).  The Court may only set aside the Secretary's final decision when the ALJ's findings were based on legal error or were not supported by substantial evidence.  Tacket v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).   The ALJ's findings are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The Court must review the administrative record as a whole to determine whether substantial evidence exists.  Andrews, 53 F.3d at 1039-40 (citing Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)).  It is not limited to the record which the ALJ cited in its decision.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001).  "[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  If the evidence is open to more than one interpretation, the Court must uphold the ALJ's decision.  Id.

1   Courts should afford substantial weight to an agency's interpretation of
2   statutes or regulations which Congress entrusted the agency to administer.  <u>Chevron</u>
3   <u>U.S.A., Inc. v. Natural Resources Defense Council</u>, 467 U.S. 837, 844 (1984); <u>see</u>
4   <u>also</u> <u>Barnhart v. Walton</u>, 535 U.S. 212, 218 (2002).  The Court must reject an
5   agency's construction that is contrary to Congressional intent, however, where the
6   statute is ambiguous or silent, the Court should defer to the agency's interpretation.
7   <u>Barnhart</u>, 535 U.S. at 218.

8   **B.   Analysis**

9       **1.   The Statutory Scheme**

10      The Medicare program, Title XVIII of the Social Security Act, § 1801 et seq.,
11  42 U.S.C. §§ 1395-1395hhh, created a health insurance program which provides
12  insurance benefits for eligible elderly and disabled people.  <u>Erringer v. Thompson</u>,
13  371 F.3d 625, 627 (9th Cir. 2004).  Part A of the program provides eligible persons
14  hospital benefits.  <u>U.S. v. Mackby</u>, 339 F.3d 1013, 1014 (9th Cir. 2003).  Part B, the
15  Part relevant to this case, "is a voluntary insurance program that pays a portion of
16  the costs of some services not covered by Part A."  <u>Id.</u> (citing 42 U.S.C. § 1395k; 42
17  C.F.R. § 410).  Part B beneficiaries receive coverage for physicians' services and
18  "services and supplies . . . furnished as an incident to a physician's professional
19  service, of kinds which are commonly furnished in physicians' offices . . . ."  42
20  U.S.C. § 1395x(s)(1)-(2)(A).  Medical services covered under Part B must be
21  furnished to noninstitutional patients in a noninstitutional setting.  42 C.F.R. §
22  410.26(b)(1).  They must also be incidental to the service and commonly included in
23  the bill, or furnished without charge, and must commonly be done in the physicians'
24  offices.  42 C.F.R. § 410.26(b)(2)-(4).  "Services and supplies must be furnished
25  under the direct supervision of the physician[,]" and "must be furnished by the
26  physician, practitioner with an incident to benefit, or auxiliary personnel."  42 C.F.R.
27  § 410.26(b)(6).
28  / / / /

Medicare Part B provides coverage for certain physical therapy services. Mackby, 339 F.3d at 1014-15.  Part B covers "outpatient physical therapy services" furnished by a clinic, public health agency, or rehabilitation agency.  42 U.S.C. § 1395x(p) (first sentence).  Part B also covers "outpatient physical therapy services" provided "by a physical therapist . . . who meets the licensing and other standards prescribed by the Secretary . . . if the furnishing of such services meets such conditions relating to health and safety as the Secretary may find necessary."  42 U.S.C. § 1395x(p) (second sentence).  Where physical therapy services are provided "incident to" a physician's services, the person providing the services does not have to be a licensed physical therapist, but must meet "the standards and conditions that apply to physical therapists, except that license to practice physical therapy is not required."  42 C.F.R. § 410.60(a)(3)(iii).  Outpatient physical therapy services must also be provided under a written treatment plan.  42 C.F.R. § 410.61.

Under the Medicare statute, the Secretary contracts with eligible private insurance carriers to perform claims processing for covered Medicare claims.  42 U.S.C. § 1395u; 42 C.F.R. Part 421.  Payment tendered to the provider of services is considered payment to the individual.  42 U.S.C. § 1395gg(a).  Where an incorrect amount is paid to the service provider, the Secretary assesses an overpayment and seeks reimbursement from the service provider, unless the service provider was "without fault with respect to the payment."  42 U.S.C. § 1395gg(b); 42 C.F.R. §§ 405.305(a)(2) and 405.371(a)(2).  The Secretary will not pursue an adjustment or recovery of overpayment where the individual is without fault, or where the recoupment would defeat the purpose of the Medicare statute or would go against good conscience and equity.  42 C.F.R. § 405.355(a).

When the service provider is not satisfied with the Secretary's determination of adjustment, he must exhaust the administrative appeals process and exhaust his administrative remedies.   42 U.S.C. § 1395ff(b); 42 C.F.R. § 405.801, et seq.  After the administrative appeals process is exhausted, and the Secretary has issued a final

decision, the service provider may pursue his claim in the district court pursuant to 42 U.S.C. § 405(g). <u>See</u> 42 U.S.C. § 1395ff(b)(1)(A).

### 2.    Was the Secretary's Decision Supported by Substantial Evidence?

Plaintiff argues that the Secretary's decision is not supported by substantial evidence and therefore, the Court should reverse the Secretary's final decision and allow him to keep the assessed overpayment.  The Secretary asserts that substantial evidence supports the decision.

The ALJ's decision, which became the Secretary's final decision when the Medicare Appeals Council denied Plaintiff's request for review, was based on three main findings: (1) Plaintiff's treatment records did not meet the written plan requirements under the CMS regulations; (2) the physical therapy services were not performed by qualified personnel; and (3) the physical therapy services provided were not medically necessary.

### a.    Plan of Treatment

For outpatient rehabilitation services to be covered by Medicare, they must be provided in accordance with a written treatment plan.  42 U.S.C. § 1395x(p)(2); 42 C.F.R. § 410.60(a)(2); 42 C.F.R. § 410.61.  Medicare requires "a plan prescribing the type, amount, and duration of physical therapy services that are to be furnished such individual has been established by a physician . . . or by a qualified physical therapist and is periodically reviewed by a physician."  42 U.S.C. § 1395x(p)(2); 42 C.F.R. §§ 410.60(a)(2) and 410.61.  Any changes in the plan must be made in writing and signed by the physician or the physical therapist and the changes must immediately be incorporated in the plan.  42 C.F.R. § 410.61(d).  The physician must conduct a review of the plan at least once every thirty days.  42 C.F.R. § 410.61(e).  Upon each review, the physician must sign and date the review records. <u>Id.</u>

The ALJ determined that Plaintiff's records did not meet the criteria for written plans of treatment set forth in the regulations.  <u>See</u>  42 U.S.C. § 1395x(p)(2);

42 C.F.R. § 410.60(a)(2); 42 C.F.R. § 410.61; (A.R. Vol. 1 at 24.)  The ALJ noted that Plaintiff's records did not evidence plans created by a physician or other appropriate individual under the regulations.  (A.R. Vol. 1 at 24.)  He further stated that the treatment forms were not signed, that Plaintiff used diagnosis codes rather than descriptive diagnoses, and that the actual treatment did not follow the planned treatment set forth in the records.  (A.R. Vol. 1 at 25.)  Specifically, the ALJ analyzed the treatment record of Plaintiff's patient Tu Hyok C., which Plaintiff presented during the hearing.  (Id.)  The ALJ determined that the record of Hyok C's treatment did not evidence any changes made or monthly reviews conducted, and further stated that any progress notes that were made did not qualify as a review or change of the plan.  (Id.)  Finally, the ALJ noted that the treatment plan for Hyok C. generally did not reflect any anticipated goals of therapy and where they did, the goals seemed unrealistic.  (Id.)  The ALJ concluded that Plaintiff's treatment plans did not meet the criteria set forth in the regulations.  (Id.)

The ALJ's decision was based on the testimony presented by Plaintiff at the hearing and the findings and recommendations made by NHIC.  (A.R. Vol. 1 at 9-31.)  At the hearing, Plaintiff testified that he met the requirements of the statute as he understood them.  (A.R. Vol. 8 at 2430-32.)  He pointed out that the records indicated the type, amount, frequency and duration of treatment.  (Id.)  He also testified that he reviewed the records every 30 days using the same type of evaluation form he used in the initial process, and that he made periodic changes in the plans.  (A.R. Vol. 8 at 2438-2439.)  Additionally, at the hearing, Plaintiff's counsel pointed out that the CMS regulations did not require a signature on the initial written plan.  (A.R. Vol. 8 at 2432: 7-24.)

While Plaintiff testified that he fully complied with the CMS regulations, the agency's interpretation of its own regulations should be given deference.  Chevron, 467 U.S. at 844.  Furthermore, the Secretary's final decision was based on substantial evidence in the record.  See Tacket, 180 F.3d 1098.  Specifically,

1   Plaintiff's treatment records do not evidence that Plaintiff adequately contemplated
2   his patients' treatment goals or potential for achievement.  See 42 C.F.R. §
3   410.61(c).  Plaintiff assigned numerical values to the treatment goals section of the
4   patient's evaluation form, however, as the ALJ noted, it is unclear how this
5   translated to an assessment of the goals or potentials of treatment.  See 42 C.F.R. §
6   410.61(c).  Additionally, as the ALJ noted, Plaintiff's treatment records indicate that
7   the actual therapy provided varied from the therapy prescribed.  For example, the
8   Plaintiff or one of his aides prescribed physical therapy for Hyok C. three times per
9   week for twelve weeks.  (A.R. Vol. 1 at 125.)  Plaintiff (or his employees) prescribed
10   15 minutes of ultra sound therapy for his back, 30 minutes of electrical stimulation
11   for his back/shoulders, 15 minutes of massage for his knees, thirty minutes
12   therapeutic exercise for his back/shoulders, and thirty minutes of kinetic activities
13   and osteopathic manipulation for areas not stated.  (A.R. Vol. 1 at 132.)  However,
14   the treatment notes from May 2, 2002 to May 15, 2002, reflect that Hyok C. actually
15   received only 15 minutes of electrical stimulation solely for his back and received 30
16   minutes of ultrasound therapy for his back and knees, among other treatments.  (A.R.
17   Vol. 1 at 128.)  The Court notes that the prescribed massage therapy and therapeutic
18   exercises were followed, however it is unclear whether the kinetic and osteopathic
19   treatment regimens were administered.  (Id.)  Additionally, Plaintiff testified that he
20   did not sign the treatment notes, and many of the Adult Progress notes were
21   unsigned.  (A.R. Vol. 1 at 176.)  Thus, it is unclear in some instances whether
22   Plaintiff or his employees created the treatment notes or progress reports.  Based on
23   all of the information in the record, the Court concludes that the ALJ's determination
24   that Plaintiff did not follow the treatment plan was based on substantial evidence in
25   the record.    Sandgathe, 108 F.3d at 980.

26               **b.    Performance of Physical Therapy Services**

27         Medicare pays for outpatient physical therapy services provided by a physical
28   therapist who meets the licensing and other requirements prescribed by the

Secretary.  42 U.S.C. § 1395x(p).  The applicable federal regulations state that Medicare covers outpatient physical therapy services provided by a physical therapist or a supervised physical therapist assistant, but only if they are furnished under one of three conditions: (1) the provider furnishes the services to a beneficiary while under the care of a medical doctor; (2) they are provided pursuant to a written treatment plan which meets the requirements of 42 C.F.R. § 410.61; or (3) they are furnished "incident to the service of a physician."  42 C.F.R. § 410.60(a)(1)-(3)(iii).  When the service is provided "incident to" a physician's services, by a person who is not the physician, physician's assistant, nurse practitioner, or nurse specialist, "the service and the person who furnishes the service must meet the standards and conditions that apply to physical therapy and physical therapists, except that a license to practice physical therapy in the State is not required."  42 C.F.R. § 410.60(a)(3)(iii).  The standards for physical therapists are set forth in 42 C.F.R. § 484.4 ("Physical therapist" and "Physical therapist assistant").  The regulation defines "physical therapist" as a person licensed to practice physical therapy in the state and who has a physical therapy degree based on an approved curriculum.  42 C.F.R. § 484.4.  A physical therapy assistant is a person licensed as an assistant in physical therapy by the state (if applicable), who has a two-year college degree from a school accredited by the American Physical Therapy Association, or has two years of experience as an assistant in physical therapy and has achieved a passing grade on a proficiency examination given, sponsored, or approved by the U.S. Public Health Service.  Id.

The ALJ determined that the physical therapy services at issue were performed by unlicensed, unqualified individuals.  The ALJ stated:

> [Plaintiff] acknowledged . . . that the physical therapy that was provided to the sample beneficiaries in this case was performed by his office employees, none of whom is a licensed physical therapist.

> Relevant State law prohibits the practice of physical therapy without appropriate licenses (Cal. Bus. & Prof. Code Sections 2630, 2655.8, 2655.11 and 2670). [Footnote omitted] State law also provides for the certifying of medical assistants who provide technical support services

under the supervision of a licensed physician and prohibits the practice of medicine by unlicensed persons (Cal. Bus. & Prof. Code Sections 2052, 2053 and 2069). [Footnote omitted]

The provision of physical therapy by Appellant's employees, who were not licensed as physical therapists is therefore a violation of state law.

CMS regulations provide that physical therapy is a skilled service that must be of a level of complexity and sophistication or the condition of the beneficiary must be such that the services required can safely and effectively be performed only by a qualified physical therapist or [by a] qualified physical therapy assistant under the supervision of a qualified physical therapist (42 C.F.R. 409.44(c)(2)(ii)).  In this case the services were performed by unqualified persons, – [Plaintiff's] unlicensed employees.  As such the services provided do not qualify as skilled rehabilitative physical therapy services.

(A.R. Vol. 1 at 26-27.)

Plaintiff has four employees performing physical therapy services.  (A.R. Vol. 8 at 2443: 20-25.)  Plaintiff testified that none of them are licensed physical therapists or licensed physical therapy assistants in the United States.  (A.R. Vol. 8 at 2443-2461.)  He further testified that one of his employees performing the physical therapy services had a massage license in the United States, another had done physical therapy type work in South Korea, and Plaintiff believed he had an "Oriental medical doctor degree."  (A.R. Vol. 8 at 2457: 8-22.)  The other two employees performing physical therapy services were not licensed or trained in physical therapy.  (A.R. Vol. 8 at 2443-2461.)  Plaintiff also testified that while he believed he had performed physical therapy personally on at least a number of the patients from the NHIC sample, he could not remember when or how many of the patients he personally serviced, and had no record of actually performing the therapy.  (A.R. Vol. 8 at 2451: 15-22.)

The information in the administrative record supports the ALJ's conclusion.  See Tacket, 180 F.3d 1098.  None of Plaintiff's employees who performed the physical therapy services in the NHIC sample were licensed physical therapists or physical therapy assistants.  See 42 C.F.R. § 484.4.  Furthermore, even if the physical therapy services were performed "incident to" a physician's services, the persons performing the services were required to meet the standards that apply to

physical therapy and physical therapists.  See 42 C.F.R. § 410.60(a)(3)(iii).  The

standards for physical therapists and physical therapy assistants require that the

person providing the services hold a license in the state if applicable.  See 42 C.F.R.

§ 484.4.  Therefore, as California required licenses for physical therapists and

physical therapy assistants, the staff members performing the services were required

to be licensed.  See 42 C.F.R. § 410.60(a)(3)(iii); see also Cal Bus. & Prof. Code §§

2655.8, 2655.9, 2655.11 and 2670.  Accordingly, the ALJ's determination that the

physical therapy services were not provided by qualified individuals is supported by

substantial evidence in the administrative record.  See Tacket, 180 F.3d 1098.

### c.    Reasonable and Necessary Services

For physical therapy services to be covered by Medicare, they must be

"reasonable and necessary" as that term is defined by the CMS regulations.  42

U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15(k)(1).  In the Medicare Carrier's

Manual ("MCM") the Secretary has set forth requirements for reasonable and

necessary services (to be covered by Medicare):

> The services must be considered under accepted standards of medical practice to be a specific and effective treatment for the patient's condition.
>
> The services must be of such a level of complexity and sophistication or the condition of the patient must be such that the services required can be safely and effectively performed only by a qualified physical therapist or under his supervision . . . if in the course of processing claims you find that the [physical therapy] services are not being furnished under proper supervision, deny the claim and bring this matter to the attention of the Division of Survey and Certification . . . .
>
> . . . .
>
> There must be an expectation that the patient's condition will improve significantly in a reasonable (and generally predictable) period of time, or the services must be necessary for the establishment of a safe and effective maintenance program required in connection with a specific disease state.
>
> The amount, frequency, and duration of the services must be reasonable.

MCM, Pub. 14-3, § 2110; (A.R. Vol. 7 at 20.)  The Secretary's determination of

whether medical services are "reasonable and necessary," and the decision to

1  prescribe rules or allow for individual adjudication, is discretionary.  Heckler v.

2  Ringer, 466 US 602, 617 (1984).

3      The ALJ concluded that all of the physical therapy services provided by

4  Plaintiff to the sample beneficiaries were not "reasonable and necessary." (A.R.

5  Vol. 1 at 27.)  The records from the treatment of the 49 sampled beneficiaries

6  indicates that each had been given substantially the same treatment and diagnosis.

7  (Id.)  Furthermore, the ALJ stated that virtually every one of the beneficiaries had

8  been diagnosed with the same symptoms of back, leg, shoulder or knee pain,

9  however, there was no record that Plaintiff performed diagnostic tests.  (Id.)   Also,

10  each was prescribed physical therapy by his office staff.  (Id.) The ALJ further noted

11  that Plaintiff was not a specialist in physical medicine and rehabilitation nor

12  neurology or orthopedic medicine.  (Id.)  The ALJ also noted disparities between the

13  treatment notes and the physical therapy examinations.  (Id.)  In sum, the ALJ

14  concluded that the treatment provided to the beneficiaries in the sample was not

15  medically necessary and that Plaintiff knew or should have known that it was not

16  covered based on the information distributed by NHIC.  (A.R. Vol. 1 at 28.)

17      The ALJ's conclusion is supported by the administrative record.  See

18  Andrews, 53 F.3d at 1039-40.  Applying the criteria set forth in the MCM, it is

19  evident that the physical therapy services Plaintiff provided the sample beneficiaries

20  were not reasonable and necessary.  (A.R. Vol. 7 at 2072-73.)  The regulations

21  require that the services be so complex that only a qualified physical therapist or a

22  qualified physical therapy assistant can perform them and if the carrier becomes

23  aware that services are not being performed under proper supervision, to deny

24  Medicare coverage.  (Id.)  As Plaintiff practices internal medicine and his staff are

25  not licensed physical therapists or physical therapy assistants under the regulations

26  or California state law, the services were not administered under proper supervision

27  and therefore violated the regulations.  See MCM, Pub. 14-3, § 2110.  Furthermore,

28  from the record it does not appear that the amount, frequency and duration of the

services were reasonable as Plaintiff diagnosed each beneficiary with substantially the same conditions and symptoms and prescribed the same course of treatment.  At the hearing on August 28, 2006, the Court noted that it might consider a limited remand on the issue of the amount of overpayment, however, after careful review of the Administrative Record after the hearing, the Court concludes that the final decision of the Secretary was based on substantial evidence and a limited remand is not appropriate under these circumstances.  See Tacket, 180 F.3d 1098.  The record supports the Secretary's conclusion that the physical therapy services provided by Plaintiff and his staff were not reasonable and necessary.

### 3.    Overpayment Recovery and Waiver

Plaintiff argues that even if the final decision of the Secretary was based on substantial evidence, the Court should find that he is not at fault and deny Administrative recovery of the overpayment.  Plaintiff contends that his use of unlicensed physical therapists was based on his interpretation of services furnished "incident to" a physician's professional services.  He testified at the hearing that he obtained this interpretation from the "Trans America Occidental Life publication," provided to him by NHIC, which he claimed defined "incident to" as therapy provided as an integral aspect of the physician's services.  (A.R. Vol. 8 at 2460: 5-20.)

Under the Medicare Act, 42 U.S.C. § 1395gg(c), there shall be no recovery if the service provider was without fault.  Courts review a Secretary's determination of fault to see if the Secretary followed the correct legal standard and if the determination was based on substantial evidence.  Quinlivan v. Sullivan, 916 F.2d 524, 526 (9th Cir. 1990).  The Secretary will not pursue an adjustment if the recoupment would defeat the purpose of the Medicare statute or would go against good conscience and equity.  42 C.F.R. § 405.355(a).  Waivers are generally allowed for overpayments due to clerical errors.  Harrison v. Heckler, 746 F.2d 480, 482 (9th Cir. 1984).

1    While Plaintiff argues that he misunderstood the Medicare regulations, there

2  is substantial evidence in the record demonstrating that he received publications

3  from NHIC which clearly defined the "incident to" requirements correctly and which

4  clearly set forth the "reasonable and necessary" requirements.  Recovery of the

5  overpayment in this case, where Plaintiff should have been aware of the rules and

6  regulations prescribed by the Secretary, would not defeat the purpose of the statute

7  or go against good conscience and equity.  See 42 C.F.R. § 405.355(a).  Based on all

8  of the information in the record, the Court concludes that the Secretary's

9  overpayment decision was based on substantial evidence.  See  Harrison, 746 F.2d at

10  483.

## Conclusion

12    Accordingly, as the Court has determined that the final decision of the

13  Secretary was supported by substantial evidence in the record, the Court **DENIES**

14  Plaintiff's motion for summary judgment and **GRANTS** the Secretary's cross-

15  motion for summary judgment.

16    IT IS SO ORDERED.

17  DATED:  September 20, 2006

18

19    MARILYN L. HUFF, District Judge
     UNITED STATES DISTRICT COURT

20

21

22

23

24

25

26

27

28

1

<u>COPIES TO:</u>
Raymond L. Riley
2   Riley & Reiner
801 South Figueroa Street, 9th Floor
3   Los Angeles, CA 90071

4   US Attorney CV
US Attorney's Office, Southern District of California
5   Civil Division
880 Front Street, Suite 6253
6   San Diego, CA 92101

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

05cv1913-h (nls)